

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRA BAILEY, )
)
   Plaintiff, )
)
vs. ) No. 05 C 4594
) Magistrate Judge Schenkier
JO ANNE B. BARNHART )
COMMISSIONER OF SOCIAL )
SECURITY, )
)
   Defendant. )

## MEMORANDUM OPINION AND ORDER

The plaintiff, Ira Bailey, has filed a motion seeking reimbursement of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000) (doc. # 52). The plaintiff contends that the Commissioner's denial of her claim for Disability Insurance (Title II) Benefits prior to her fifty-fifth birthday, which was reversed and remanded by a written memorandum opinion and order of this Court dated June 12, 2006 ("Mem. Op."), was not "substantially justified."

Plaintiff seeks a total award of fees and costs in the amount of $11,364.20 (the sum of $10,868.20[1] requested in plaintiff's original EAJA petition and $496.00 fees incurred in filing the EAJA reply brief). For the reasons stated below, we grant the plaintiff's motion and award attorney's fees and costs in the revised amount of $11,493.88.

---

[1] Plaintiff's EAJA petition requested fees in the amount of $10,363.25 (Pl.'s Pet. 2), but the accompanying Memorandum in Support of the Petition requested fees in the amount of $10,868.20. (Pl.'s Mem. 4). The Court considers the initial request to be $10,868.20, as that amount is supported by the itemization of hourly time and corresponding calculations.

1

# I.

Under the EAJA, a successful litigant against the federal government is entitled to recover attorney's fees where (1) she is a "prevailing party"; (2) the government's position was not "substantially justified"; (3) no "special circumstances" exist which would make the award unjust; and (4) she timely filed an application for fees. 28 U.S.C. § 2412(d)(1)(A),(B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). In the present case, the parties agree that the only issue in question is whether the Commissioner's position was "substantially justified." The Commissioner has the burden of proving that her position was substantially justified. *Id.* at 724.

The question of substantial justification in essence is one of reasonableness. *See e.g., Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Commissioner's position is substantially justified if it has a reasonable basis in law and fact, and there is a reasonable connection between the facts in the record and the legal theory adopted. *See Golembiewski*, 382 F.3d at 724. In other words, the position is substantially justified if a reasonable person could believe the position was correct, or if there is a genuine dispute. *Pierce*, 487 U.S. at 565.

Under the EAJA, a court may award attorney's fees if either the Commissioner's pre-litigation conduct or her litigation position is not substantially justified. *Golembiewski*, 382 F.3d at 724. For this purpose, an Administrative Law Judge's ("ALJ") decision is treated as part of the Commissioner's pre-litigation conduct. *Id.* "While the parties' postures on individual matters may be more or less justified, the EAJA – like other fee shifting statutes – favors treating a case as an inclusive whole, rather than atomized line items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990). Accordingly, this Court's duty is to make a global assessment of the

Commissioner's conduct and make a single determination for the entire action. *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000).

The substantial justification standard is not equivalent to the "substantial evidence" standard used to evaluate an ALJ's decision on the merits of a disability claim. *Hallmark*, 200 F.3d at 1080 (citation omitted). Accordingly, a finding that the case should be remanded because the Commissioner's position was not supported by substantial evidence, is not conclusive evidence that fees should be awarded under the EAJA. *Id.* at 1079-80. Nonetheless, strong language against the Commissioner's position in an opinion on the merits is evidence in support of an award of fees. *Golembiewski*, 382 F.3d at 724. Conversely, a court decision suggesting a close case supports the denial of fees. *See e.g., Cummings v. Sullivan*, 950 F.2d 492, 498 (7th Cir. 1991) (noting that "the closeness of the question is, in itself, evidence of substantial justification").

## II.

In this case, the parties focus primarily on whether the Commissioner's pre-litigation position was substantially justified: in particular the May 24, 2005 determination by the ALJ, which found that the plaintiff was not entitled to Title II benefits prior to her fifty-fifth birthday. On review of that determination, we identified a number of errors in the ALJ's reasoning which led the Court to reverse the denial of benefits, and to remand the case for further consideration.

*First*, the Court found that the ALJ did not provide sufficient justification for her conclusion that the physical residual functional capacity ("RFC") assessment by the plaintiff's primary doctor, Dr. Fitzgerald, was entitled to little or no weight (Mem. Op. at 25-26). *Second*, once the ALJ had rejected the available medical evidence, she impermissibly "played doctor" by

constructing her own physical RFC assessment, without "fleshing out" the record or consulting a medical advisor (Mem. Op. at 27-28). *Third*, the ALJ failed to resolve inconsistent evidence about the plaintiff's mental condition or address how possible mental limitations affected her ability to work during the relevant time period (Mem. Op. at 28-29). *Fourth*, the ALJ did not fully consider the impact of the plaintiff's speech aphasia on her ability to hold the skilled jobs which the vocational expert testified she may have been physically capable of performing (Mem. Op. at 29-31). In total, the Court found that the ALJ did not sufficiently "articulate [her] reasons for choosing one piece of evidence over another" or provide the necessary "logical bridge" between the evidence and her conclusions (Mem. Op. at 33).

In light of these findings, the question before the Court is whether the Commissioner was substantially justified in affirming the ALJ's decision. For the reasons set forth below, we find that she was not.

### A.

As an initial matter, the Commissioner asserts that the Court's rejection of one of plaintiff's arguments on the merits is strong evidence that the Commissioner's position was substantially justified (Def.'s Resp. 2-3). In her summary judgment papers, plaintiff argued that the physical RFC assessment prepared by Dr. Fitzgerald should be treated as that of a treating physician, despite the lack of personal contact with the plaintiff for eighteen straight months (Mem. Op at 24). In support of this position, the plaintiff took the view that Dr. O'Sullivan's progress notes for that eighteen-month period supported Dr. Fitzgerald's subsequent RFC opinion (*Id.*). We disagreed with this view of the progress notes and thus found "no error" in the ALJ's refusal to treat Dr. Fitzgerald's RFC assessment as that of a treating physician (Mem. Op.

at 24-25). That said, we believe that the Commissioner's argument on this issue largely misses the point.

As noted above, whether the Commissioner's position was substantially justified depends on a "global assessment" of the entire civil action. *Hallmark*, 200 F.3d at 1081. Accordingly, we agree with other courts that have rejected the notion that a plaintiff must prevail on all, or even a majority, of her arguments in order to be awarded fees under the EAJA. *See Mallette v. Sullivan*, 1990 WL 19894, *3-5 (N.D. Ill. 1990). Indeed, it would be unreasonable to require a plaintiff to prevail on every argument raised in the litigation, given that she may raise alternative theories in support of a particular result. *Id.* at * 4 (citing *Holden v. Heckler*, 615 F.Supp. 686, 695-96 (N.D. Ohio 1985)).

Moreover, a plaintiff's failure to prevail on a particular argument is even less relevant to a substantial justification determination when, as here, the focus of that determination is the government's pre-litigation conduct – at least in the form of an ALJ's decision. That is true because, while the reasonableness of the government's litigation position may depend upon the plaintiff's litigation position, whether the ALJ's preceding decision was substantially justified is necessarily an independent determination. For example, if the plaintiff raises a clearly erroneous argument on appeal of an ALJ's determination, the Commissioner's decision to oppose that position in *litigation* may be justified, even if her *pre-litigation* conduct was not substantially justified (*e.g.*, because the ALJ's decision was flawed in several other ways). After all, we are concerned with the level of justification for the government's position, not the justification for the positions taken by the opposing private party.

In this case, the ALJ's pre-litigation refusal to treat Dr. Fitzgerald's RFC as that of a treating physician was reasonable, as was the Commissioner's litigation position defending that portion of the ALJ's decision. However, for the reasons stated above, we do not believe those facts shed light on the question of whether the Commissioner was substantially justified in affirming the ALJ's denial of benefits. Rather, we must consider the ALJ's decision as a whole to make such a determination.

### B.

While this Court found no error in the ALJ's refusal to treat Dr. Fitzgerald's RFC as that of a treating physician, we did find error in the ALJ's decision to give that RFC little or no weight (Mem. Op. at 25). In making that decision, the ALJ found an "alleged inconsistency between Dr. Fitzgerald's April 2000 progress note, which the ALJ characterized as reporting that plaintiff had 'no *lasting* CNS problems,' and Dr. Fitzgerald's July 2001 RFC assessment, which states that plaintiff had a limited ability to speak given aphasia which was 'improved but still obvious'" (Mem Op. at 26) (citations omitted) (emphasis added). Additionally, the ALJ observed that Dr. Fitzgerald's RFC assessment contained "marked changes" from other medical evidence in the case.

Upon review of the record, we determined that these findings did not provide sufficient justification for the ALJ to disregard or marginalize Dr. Fitzgerald's RFC finding. *First*, we pointed out that the problem with the ALJ's conclusion is that Dr. Fitzgerald's note actually said that the plaintiff had "no *further* CNS problems" (Mem. Op. at 26) (emphasis in original), a statement that was clearly susceptible to varying interpretations. While one possible interpretation was that the plaintiff had no "lasting" CNS problems, the phrase "no further"

6

could also have meant "no additional" problems (*Id.*). The ALJ failed to explain how she chose between these competing interpretations, and instead seemingly ignored the word "further" in the progress note. *Second,* other than the ambiguous "CNS" statement, the ALJ provided no explanation or citation to the record for her finding that there were "marked changes" in Dr. Fitzgerald's RFC assessment. Therefore, we concluded that the ALJ did not "build a logical bridge from the evidence to the conclusion" as is required by the controlling case law (*Id.*) (citation omitted).

The Commissioner argues that since the "CNS" statement was open to varying reasonable interpretations, and the ALJ chose one of those reasonable interpretations, her determination on this point did not lack substantial justification (Def.'s Resp. 3). This argument, however, fails to address the real problem with the ALJ's decision: her failure to adduce evidence to resolve the ambiguity, and to explain her resolution in sufficient detail to satisfy the minimal articulation requirement. *See Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001). While it was possible that the phrase "no further CNS problems" meant "no lasting CNS problems," it was unreasonable to draw that conclusion without having (and articulating) an appropriate basis for doing so. As we stated, "[t]he ALJ has a duty to flesh out an opinion for which the medical support is not readily discernable" (Mem. Op. at 26) (quoting *Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir. 2004)). Here, the ALJ failed to obtain clarification of Dr. Fitzgerald's ambiguous note or sufficiently "flesh out" her opinion. We do not believe she was substantially justified in doing so.

## C.

This Court also found serious error in the ALJ's decision to "construc[t] a 'middle ground' and [come] up with her own *physical* RFC assessment" because she disagreed with all the physical RFCs in the record (Mem. Op. at 27) (emphasis original). After rejecting Dr. Fitzgerald's RFC, the ALJ also rejected the RFC assessments completed by doctors from the Illinois Disability Determination ("DDS") Service because they had not examined or observed the plaintiff (*Id.*). With no additional medical evidence in the record, the ALJ constructed her own RFC assessment, including "specific lift, carry, push and or pull findings . . ." (*Id.*). Based on her newly-developed RFC, the ALJ concluded "that plaintiff had the physical ability to perform and sustain a wide range of light and sedentary work" (*Id.*)(citation and internal quotation marks omitted). Applying Seventh Circuit precedent, we found that by constructing her own physical RFC assessment without support from the available medical record, the ALJ had "impermissibly 'played doctor' – something expressly prohibited by the controlling case law" (Mem. Op. at 28) (citations omitted).

The Commissioner contends that the ALJ's decision to take the middle ground between the conflicting RFC assessments was reasonable. The premise for this contention is her claim that the Court applied the mistaken "proposition that an ALJ's RFC must match the opinion of at least one physician of record" (Def.'s Resp. 5). The Commissioner argues at length that such a proposition is not supported by the cited cases and in fact conflicts with other authority which requires an ALJ to consider both medical and non-medical evidence in making a RFC determination and leaves the final disability determination to the agency (Def.'s Resp. 5-8). Citing case law, the Commissioner asserts that an ALJ need not rely on a physician's assessment

8

when determining a claimant's RFC (Def.'s Resp. 7). In this case, the Commissioner contends that the ALJ reasonably combined her assessment of the plaintiff's credibility with the medical evidence in finding that the plaintiff was not disabled (*Id.* at 8). Thus, she argues, even though the final conclusion may not have been supported by substantial evidence, it was nonetheless substantially justified (*Id.*).

We find this argument unpersuasive. *First*, this argument misinterprets our holding in the merits opinion. Our decision in no way rested on the proposition that an ALJ's RFC assessment must match that of a physician in the record. Rather, our conclusion was based on the well-established rule that where an ALJ "lacks sufficient evidence to make a decision, [s]he must adequately develop the record and, if necessary, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)(citations omitted). *Second*, the Commissioner does not proffer a reasonable alternative justification for the ALJ's RFC assessment. While the Commissioner points to certain legal principles and the ALJ's credibility analysis, her argument sidesteps the fatal flaws in the ALJ's reasoning and thus falls far short of showing substantial justification.

1.

To begin our discussion, it is important to distinguish between two related legal propositions. On the one hand, as the Commissioner correctly points out, the ALJ must take into account both medical and non-medical evidence in making the final determination of whether a claimant is disabled. *See e.g., Clifford*, 227 F.3d at 870. On the other hand, it is equally true that an ALJ "must not succumb to the temptation to play doctor and make [her] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted). We recognize that, at times, there can be some tension between evaluating conflicting medical

9

evidence and making independent medical findings. Despite the fact that the line separating these two principles on occasion may be thin, the two propositions are distinct; they do not conflict and an ALJ has a duty to follow both. Moreover, when the record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

When reviewing the decision of an ALJ on appeal, we have a corresponding obligation to ensure that the ALJ appropriately considered both medical and non-medical evidence, while at the same time avoiding the temptation to "play doctor." If an ALJ's decision in a particular case falls into the "gray area" between evaluating conflicting evidence and making an independent medical judgment, the deferential nature of the substantial evidence (or substantial justification) standard directs that we affirm the decision (or deny fees). However, precisely because of the difficulty of reviewing potentially narrow distinctions on appeal, the Seventh Circuit has repeatedly made clear that an ALJ must articulate reasons for reaching a particular result which build a "logical bridge" between the evidence and the ALJ's conclusions. *See e.g., Clifford*, 227 F.3d at 872. Because of this requirement, what matters is not simply the ALJ's final conclusion, but also the process by which it was reached. More specifically, while it is the ALJ's responsibility to resolve conflicting medical evidence, her method of doing so must be reasonable and adequately explained.

Applying these principles to the present case, we found that the ALJ's physical RFC assessment did not fall into a "gray area"; rather, it was a clear example of an ALJ making an independent medical finding. We found that the ALJ "made specific lift, carry, push and or pull findings consistent with the light work requirements…without *any* citation to the record" (Mem.

Op. at 27)(emphasis added). Moreover, on our independent review of the record we were unable to identify "*any* medical evidence to support [the ALJ's] finding" (*Id.*)(emphasis added). It is difficult to imagine a more textbook illustration of "playing doctor" than constructing an RFC assessment, including very specific medical findings (*e.g.*, that plaintiff could lift 20 pounds occasionally and 10 pounds frequently), without any evidentiary support (Mem. Op. at 27). Accordingly, we held that the ALJ's findings on this point were not supported by substantial evidence.

Moreover, while recognizing that there was conflicting medical evidence in this case, we also concluded that the ALJ had erred in by the process she used to resolve (or failed to resolve) the conflict. As we stated in the opinion, "[h]aving rejected the available medical record upon which to base an RFC assessment, the ALJ was then required to call a medical advisor and/or obtain clarification of the record to flesh out what she needed to support her decision" (Mem. Op. at 27)(citation omitted). In other words, it was the ALJ's duty to: (1) develop the record to a sufficient degree to enable her to construct a reasonable RFC based on objective evidence; and (2) articulate clearly how and why that finding was reached. The ALJ failed to do either of these two things. Instead, she constructed an unsupported RFC assessment based on the "middle ground" between two existing RFCs without any explanation. That was not a reasonable way to resolve the conflicting medical record, or to compensate for the lack of evidence.

Thus, our opinion did not rely upon the proposition "that an ALJ cannot find an RFC for a claimant that does not match a specific physician opinion of record" (Def.'s Resp. 6). Rather, we held that the ALJ erred in failing to flesh out the record and constructing an RFC assessment without any supporting evidence, not in failing to adopt an RFC of a physician already in the

11

record. It was in light of that holding that we commented that on remand, given the lack of remaining medical evidence, the ALJ will be required to call a medical advisor in order to flesh out the record.

Our conclusion does not "preclud[e] an ALJ from independently evaluating medical evidence and forc[e] the ALJ to rely on a physician's interpretation of that evidence" (Def.'s Resp. 5). On remand, the ALJ can utilize the expert to flesh out the record as necessary to enable her to make an informed, supported RFC assessment. In doing so, she remains free to independently evaluate both medical and non-medical evidence, as long as her final RFC findings are supported by substantial evidence and adequately explained.

## 2.

The Commissioner also fails to offer a reasonable alternative rationale for the ALJ's RFC assessment which would render it substantially justified. The Commissioner argues that the ALJ's credibility analysis demonstrates that the ALJ built a "logical bridge" between her findings and the evidentiary record (Def.'s Resp. 4). After rejecting the conflicting medical evidence, the ALJ placed significant weight on her determination that the plaintiff's testimony was not credible (Mem. Op. at 19). However, we found that under the circumstances, the credibility analysis added little to determining whether the ALJ's decision was supported by substantial evidence because: (1) the plaintiff's testimony included a statement against her self-interest; and, (2) the plaintiff did not challenge the credibility analysis (*Id.*). Accordingly, we did not discuss the credibility analysis in detail in the merits opinion.

We agree with the Commissioner that the credibility analysis should be freshly considered as it relates to the substantial justification question. However, we do not believe that

the ALJ's credibility analysis supports a finding of substantial justification in this case. Accepting, *arguendo*, that the ALJ's finding on credibility was reasonable, the ALJ's credibility finding does not provide substantial justification for either the ALJ's RFC assessment or her ultimate conclusion. After making the credibility determination, the ALJ was still faced with a significant information gap which, as discussed above, she had a duty to close. The ALJ's credibility analysis did not provide the information needed to close that gap.

To the extent that the Commissioner suggests that because the physical RFC assessments in the record were conflicting, it was reasonable for the ALJ to take a middle position between them (Def.'s Resp. 4), we cannot agree. If the ALJ was prohibited from seeking clarification or additional information, choosing the middle ground may have been a reasonable response when confronted with the need to make a decision. However, a reasonable person, faced with a similar information gap and no such restriction, would undoubtedly seek out the additional facts necessary to make an informed determination. As discussed above, the ALJ has not only the freedom to collect more information, but the mandate to do so based on clear precedent in this Circuit. The ALJ's failure to do so was without substantial justification.

In support of her position, the Commissioner also posits the legal proposition that an ALJ need not rely on a physician's assessment when determining a claimant's RFC (Def.'s Resp. 7). However, the authority relied on for this proposition, *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995), states only that an ALJ need not rely *solely* on the opinions of physicians and must consider the entire record. This is really no more than a restatement of the principle discussed in detail above – that an ALJ must take into account both medical and non-medical evidence in

making an RFC assessment. Therefore, *Diaz* does not support a conclusion that the ALJ was reasonable in constructing a "middle ground" RFC assessment without any evidentiary support.

To the contrary, *Diaz* illustrates the shortcomings of the ALJ's approach in this case. In affirming an ALJ's determination, the *Diaz* court described in some detail the significant amount of specific evidence, both medical and non-medical, which the ALJ relied on to reach his RFC assessment. *Diaz*, 55 F.3d at 306-07. The evidence included detailed medical records, the claimant's own testimony about his physical abilities (*e.g.*, how much weight he could lift), and the claimant's work history. *Id.* Those facts stand in stark contrast to the complete lack of evidentiary support offered by the ALJ for the RFC assessment in the present case.

In order for the ALJ's RFC assessment to be substantially justified, it must have a reasonable basis in law and fact. *Golembiewski*, 382 F.3d at 724. We found on the merits that the ALJ's decision to construct a "middle ground" RFC assessment without any evidentiary support violated the ALJ's well-settled obligations under Seventh Circuit precedent. The Commissioner has not provided an alternative reasonable basis for the ALJ's conclusions. Therefore, we find that the ALJ's RFC assessment strongly supports a finding that the Commissioner's pre-litigation position was not substantially justified.

### D.

Finally, we also found that the ALJ erred by not sufficiently considering evidence of the plaintiff's mental capacity and speech aphasia in her decision to deny benefits (Mem. Op. at 28-30). Among other things, we noted that the ALJ gave "significant weight" to a mental RFC assessment without reconciling inconsistent observations made by the same doctor in a Psychiatric Review Technique ("PRT") issued on the same day (Mem. Op. at 28). Additionally,

the ALJ failed to address the impact of the plaintiff's mental capacity or speech aphasia on her ability to work. In the case of the mental capacity, the ALJ failed to acknowledge contrary testimony by the vocational expert ("VE") suggesting that plaintiff's possible mental impairments, if confirmed, would preclude her from working (Mem. Op. at 29). Similarly, the ALJ failed to ask the VE about the possible negative effects of the plaintiff's speech aphasia despite substantial evidence of it in the record (Mem. Op. at 29-30).

Despite these findings, the Commissioner asserts that the ALJ's findings related to speech aphasia were substantially justified because she took note of some relevant factors, including the lack of records on plaintiff's speech therapy sessions and plaintiff's admitted improvement as a result of that therapy (Def.'s Resp. 8). We disagree. As stated in the merits opinion, the medical records clearly indicated that the plaintiff's speech was impaired during the relevant time period (Mem. Op. at 30). However, the ALJ erroneously based her conclusions, at least in part, on her observation that the plaintiff was able to communicate during the hearing held nearly three years after the date in question (Mem. Op. at 31). Moreover, the failure to reconcile the inconsistent evidence relating to the plaintiff's mental capacity was a significant error, independent of any consideration of the speech aphasia. The Commissioner provides no explanation for this error. Accordingly, we conclude that the ALJ's treatment of evidence on mental capacity and speech aphasia lacked substantial justification.

### E.

As discussed above, in a petition for attorney's fees under the EAJA, the government bears the burden of proving that its position was substantially justified. *Golembiewski*, 382 F.3d at 724. After careful review of the record and our underlying opinion on the merits, we conclude

that the Commissioner did not meet her burden in this case. As a result, this Court finds that the Commissioner's position in affirming the ALJ's determination was not substantially justified, and we thus will award attorney's fees and costs under the EAJA.

### III.

As required by the EAJA, 28 U.S.C. § 2412(d)(1)(B), plaintiff's counsel submitted an itemized statement of time expended on this case and hourly rates on which the total fee calculation was based. The Commissioner does not dispute the reasonableness of the time spent, hourly rates, or total fees requested. We similarly find the time spent to be reasonable, but review the appropriateness of the plaintiff's methodology and accuracy of her calculations to determine the final award amount.

The plaintiff's initial EAJA petition requested an award in the amount of $10,363.25 (Pl.'s Pet. 2). However, her supporting memorandum indicated that the amount initially sought was actually $10,868.20 for 62.6 hours of attorney time, 2.3 hours of legal assistant time, and $250.00 in costs (Pl.'s Mem. 4). Since the latter figure is supported by the calculations included in the itemized statement, (Pl.'s Mem. at Ex. A), we believe it is the correct intended initial request and the lower amount included in the petition ($10,363.25) the result of a transcription error. Plaintiff's counsel subsequently submitted a supplemental request of $496.00, for 3.1 hours spent preparing the plaintiff's reply brief in this EAJA matter (Pl.'s Reply 6-7). Therefore, in sum the plaintiff now seeks a total award of $11,364.20 (*Id.*).

To calculate the total fee amount, plaintiff's counsel applied a different hourly rate for attorney's time for each month in which work was performed on the case (Pl.'s Mem. at Ex. A). The rates were calculated based on changes in the Consumer Price Index ("CPI") between March

1996, when the EAJA was amended, and the applicable month. Legal assistant time was billed at a flat rate of $85.00 per hour. As mentioned above, the Commissioner does not challenge these rates or methodology. Similarly, we find no flaw in the approach and believe it fairly captures cost of living increases allowable under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A) (2000).

Therefore, to determine the final award amount, we apply the plaintiff's methodology to the itemized statement of work. When we sum the number of hours in the itemized statement, we arrive at slightly different totals than did the plaintiff. By our calculations, plaintiff's counsel is entitled to fees and costs of $10,997.88 for 65.9 hours of attorney time, 1.8 hours of legal assistant time, and $250.00 in costs for work performed prior to the reply in this EAJA action. Adding the supplemental request of $496.00, the total award comes to $11,493.88.

## CONCLUSION

For the reasons stated above, the Court grants the plaintiff's motion for attorney's fees and costs pursuant to the EAJA, 28 U.S.C. § 2412, in the amount of $11,493.88.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 1, 2006**

17